## JOHN GAUNT

### V.

## HENRY FROELICH ET AL.

*Mistake in Levy of Attachment, Special Execution and Certificate of Purchase—Bill to Correct—Subsequent Purchaser—Trust Fund with which to Redeem—Demurrer.*

Upon a bill to correct a mistake in the levy of a writ of attachment, in a special execution and in a certificate of purchase, so as to include all of certain lots intended to be included, or to require a subsequent purchaser to pay over a part of the purchase money left with him for the redemption from the sale, it is *held:* That the court below improperly sustained a general demurrer; that the complainant was at least entitled to the alternative relief prayed; that said subsequent purchaser holds the money so left in his hands as trustee for the complainant; and that he can claim no exemption in the execution of his trust by reason of his own violation of duty in failing to apply said fund while the right to redeem existed.

[Opinion filed October 5, 1887.]

APPEAL from the Circuit Court of Madison County; the Hon. AMOS WATTS, Judge, presiding.

This was a bill in equity filed in the Madison Circuit Court by the appellant against the appellees, substantially averring that he sued out of said Circuit Court a writ of attachment against said Froelich, for an indebtedness then due and owing, and that, at said time, said Froelich was the owner of lots two, twenty-six and twenty-seven in Meeker and Krafft's addition to Edwardsville, in said county; that the first above described lot by itself was of but little value, but the other two were well improved, the improvements alone being worth above $3,000; avers that the Sheriff, not being well advised as to the description of said lots, levied the writ upon lot two only, when it was intended by his attorneys, as well as said Sheriff, to make said levy upon the three lots; avers that at the March term of said Circuit Court he recovered a judgment in said attachment proceeding for $689 and cost of suit, and, upon

special execution issued thereon, the said lot two was sold for the whole amount of the debt, interest and costs to complainant, but at said time it was supposed by the Sheriff and the complainant that the sale included the three lots instead of the one only; that the certificate of sale contained the same mistaken description. Further, that while complainant still held said certificate of purchase, said Froelich sold and by warranty deed conveyed to appellee, John Keller, the said three lots for the sum of $2,856.50, and that said Keller, before his purchase, had the title examined and, having notice of the mistake before recited and with the consent of said Froelich, reserved from said consideration a sum sufficient to redeem said lot two from the sale to the complainant, and that the money was left with Keller by Froelich for the purpose and to be so used by him in making such redemption. The prayer of the bill is in the alternative, either that the mistake in the levy of the writ of attachment, as well as under the execution and in the certificate of sale be corrected so as to include the said three lots, or, if this can not be done, that said Keller be decreed to pay over to complainant the said sum of money for the redemption from said sale left with him by Froelich to be so applied and thereby make said redemption effectual. A general demurrer was interposed to the bill by defendants, and being sustained by the court, the bill was dismissed and complainant below appealed to this court.

Messrs. HAPPY & TRAVOUS, for appellant.

The relief sought by the bill, as amended, is two-fold:

First—The correction of the levy of the writ of attachment, special execution and certificate of purchase.

Second—The enforcement of a trust.

If either of these claims for relief is proper for the jurisdiction of a court of equity, the demurrer should have been overruled, and the bill retained. Gooch v. Green, 102 Ill. 507; Pool v. Docker, 92 Ill. 501.

It appears that the entire property was conveyed to defendant Keller, by warranty deed, and to make the warranty good an arrangement was entered into between Froelich and Keller

by which the latter reserved from the purchase price a certain sum for the express purpose of redeeming from the Sheriff's sale by appellant and clearing the title; and now in violation of this agreement and the confidence reposed in him, he retains the money and refuses to perform the trust. Under this arrangement with his vendor he took the property, not merely as owner but as trustee, clothed with a duty to perform in respect thereto, and a court of equity will not hesitate to enforce its performance. Doolittle v. Jenkins, 55 Ill. 400; Freer v. Lake, 115 Ill. 662; Rodney v. Shankland, 12 Am. Dec. 70; 2 Story's Eq. Jur., Secs. 1041, 1213; Stockard v. Stockard, 46 Am. Dec. 79; Cooper v. McClun, 16 Ill. 435; Coates v. Woodworth, 13 Ill. 654.

Messrs. DALE & BRADSHAW, for John and Sarah Keller, appellees.

The sale of the lot and the bidding of it in by appellant, under the special execution, for the full amount of his judgment and costs, operated as a complete payment, discharge and satisfaction of his judgment.

Unless it be where a fraud is practiced upon the purchaser, the doctrine of *caveat emptor* applies in all judicial sales; the officer selling has no power to warrant title or impose terms or conditions on the sale beyond those required by law; the purchaser is presumed to have examined the title and to know what he is acquiring. Bishop v. O'Conner, 69 Ill. 431; England v. Clark, 4 Scam. 486.

It is said the lot was not worth what appellant bid it in for. The law is, if loss ensues the purchaser must bear it. Roberts v. Hughes, 81 Ill. 130.

*Caveat emptor* is universally applied in judicial sales. Owings v. Thompson, 3 Scam. 502; McManus v. Keith, 49 Ill. 388; Walbridge v. Day, 31 Ill. 379.

In the absence of all fraud, a court of equity can not relieve a purchaser at a judicial sale on the ground that the title fails. The maxim *caveat emptor* is the same in equity as in law in respect to such sales. Holmes v. Shaver, 78 Ill. 578; Bassett v. Lockard, 60 Ill. 164.

It is said that when Froelich sold to Keller, he (Keller) re-served out of the purchase price a sum sufficient to redeem from appellant's sale. Suppose he did? It was a matter purely between Froelich and Keller. Appellant was no party to this arrangement. Neither Froelich nor Keller owed appel-lant a dollar. Keller may have thought at the time that he might redeem lot two, and as appellant would not be willing to take less than his bid and interest, Keller and Froelich had a perfect right to make that arrangement, and Keller could redeem or not, as he liked. Appellant could have no remedy even against Froelich; could he have any against his grantee? Froelich, had he continued to own the property, would have been under no legal or moral obligation to redeem from ap-pellant's sale. Neither Froelich, his attorney nor his agents, made any representation to induce appellant to make the pur-chase he did. Appellant purchased—had his levy and sale made—with the records open before him, and he acquired all he had a right to expect without any redemption, and if he has sustained any loss it has been purely by his own *laches* and a court of equity has no power to compel any one else to help him sustain it.

PILLSBURY, J. Without, at this time, discussing the ques-tion whether a court of equity would grant the relief upon the ground first stated in the bill by correcting the mistake in the levy of the writ of attachment, the levy of the special execution and in the certificate of purchase, we have no doubt that a general demurrer would not lie to the bill, as under the second ground set up for relief the complainant, by his bill, has shown himself entitled to the alternative relief prayed.

When Froelich conveyed the premises to Keller, according to the averments of the bill, they had notice of the alleged mistake, as well as of the state of the title, and Froelich con-veyed by warranty deed the whole three lots for a consider-ation considered adequate for a perfect title. Knowing of complainant's claim by virtue of his certificate of purchase, and to protect his covenants in his deed, he left sufficient money in the hands of Keller, the purchaser, to be applied by him in

discharge of said incumbrance, and Keller in accepting the money undertook to discharge the trust thus imposed upon him and voluntarily assumed by him.

No one will doubt that the grantor had the right to direct the payment of enough of the purchase money to complainant to clear the title, and Keller having accepted the money to be thus applied, can not now be heard to say he is willing to lose the title to lot 2, as it is far less in value than the money left with him to pay off the incumbrance. The money was left with him for a specified purpose, and by accepting he undertook to apply it as requested. It is true that it does not appear from the bill that he bought subject to the incumbrance and promised to discharge it as part consideration of the purchase, thus creating an assumpsit upon which complainant could maintain an action at law under our decisions, but this only goes to show in a clearer light, that he accepted the money as a trustee for the complainant, to be paid to him in discharge of his incumbrance.

It was the duty of Keller to thus apply the money at once while the right to redeem existed, but he can claim no exemption in the execution of such trust occasioned by his own violation of duty, so long as the complainant insists upon its performance.

We think these principles are too elementary to require the citation of authorities to support them.

The very fact that complainant has come into a court of equity asking for a decree compelling Keller to apply the money left with him for the purpose of making the redemption to that purpose, is a sufficient allegation that the complainant is willing and ready and offers to have such redemption made and perfected.

Upon this ground in the bill if no other, the complainant was entitled to relief, and the court should have so decreed, and, as it did not, its decree dismissing the bill will be reversed and the cause remanded to the end that a hearing may be had upon the merits.

*Decree reversed.*